**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------x
                             :
GINA C.                      :    Civ. No. 3:21CV00423(SALM)
                             :
v.                           :
                             :
COMMISSIONER OF THE SOCIAL   :
SECURITY ADMINISTRATION[1]   :    January 18, 2022
                             :
-----------------------------x
```

<u>**RULING ON CROSS MOTIONS**</u>

Plaintiff Gina C. ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff moves for an order reversing the

---

[1] Plaintiff has named Andrew Saul, a <u>former</u> Commissioner of the Social Security Administration, as defendant. Claims seeking judicial review of a final agency decision are filed against the Commissioner in his or her official capacity; as a result, the particular individual currently serving as Commissioner is of no import. <u>See</u> Fed. R. Civ. P. 17(d) ("A public officer who ... is sued in an official capacity may be designated by official title rather than by name[.]"); 42 U.S.C. §405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). Accordingly, the Clerk of the Court is directed to update the docket to name the Commissioner of the Social Security Administration as the defendant. <u>See</u> Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

Commissioner's decision, or in the alternative, for remand for a hearing. [Doc. #17]. Defendant has filed a cross-motion seeking an order affirming the decision of the Commissioner. [Doc. #21].

For the reasons set forth below, plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing **[Doc. #17]** is **DENIED**, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #21]** is **GRANTED.**

I.   **PROCEDURAL HISTORY**[2]

"The procedural history" of this case "is extensive." Certified Transcript of the Administrative Record, Doc. #13, compiled on July 23, 2021, (hereinafter "Tr.") at 21.

Plaintiff initially applied for SSI and DIB in 2013 and 2014, alleging disability beginning November 5, 2012 (hereinafter the "initial applications"). See Tr. 546-52.[3] Plaintiff's applications were denied initially on January 16,

---

[2] Plaintiff filed a Medical Chronology with her motion and supporting memorandum, see Doc. #17-3, to which defendant filed a response, see Doc. #21-2.

[3] The Court has been unable to locate plaintiff's initial SSI application in the record, which according to Administrative Law Judge Ronald J. Thomas' 2016 decision, was filed on May 22, 2014. See Tr. 193. In addition to the DIB application dated October 10, 2013, the record also contains DIB applications dated November 5, 2012, and April 5, 2013. See Tr. 534-45. Because this uncertainty has no bearing on the Court's decision, the Court does not address this further.

2014, see Tr. 174-75, and upon reconsideration on May 14, 2014. See Tr. 184-85; see also Tr. 193.

On January 6, 2016, plaintiff, then self-represented, appeared at a hearing before Administrative Law Judge Ronald J. Thomas (hereinafter the "ALJ" or "ALJ Thomas"). See Tr. 193.[4] On June 22, 2016, the ALJ issued an unfavorable decision (the "2016 decision"). See Tr. 187-210. On July 23, 2018, the Appeals Council denied plaintiff's request for review of the 2016 decision. See Tr. 211-18.

While the 2016 decision was pending review by the Appeals Council, in November 2016, plaintiff filed subsequent applications for DIB and SSI, alleging disability beginning on November 5, 2012 (collectively the "2016 applications"). See Tr. 553-63.[5] Plaintiff's 2016 applications were denied initially on March 8, 2017, see Tr. 325-28, Tr. 331-34, and upon reconsideration on April 25, 2017. See Tr. 306-23. On November 14, 2018, plaintiff, represented by Attorney Olia Yelner, appeared and testified at a hearing before Administrative Law Judge Deirdre R. Horton. See generally Tr. 80-115. On December

_____

[4] The transcript of this hearing, like many other administrative documents, is not in the record. Because the parties do not raise any concerns about this gap, the Court does not address it further.

[5] At some point during the administrative process, plaintiff amended the alleged onset date to February 7, 2013. See Tr. 21.

19, 2018, ALJ Horton issued an unfavorable decision (hereinafter the "2018 decision"). See Tr. 226-49.

Prior to the issuance of the 2018 decision, on September 17, 2018, plaintiff, represented by Attorney Yelner, filed a complaint in the United States District Court for the District of Connecticut seeking review of ALJ Thomas' 2016 decision. See Tr. 219-25; see also Gina C. v. Berryhill, No. 3:18CV01571(WIG) (D. Conn. Sept. 17, 2018). On January 22, 2019, plaintiff filed a motion to reverse the decision of the commissioner. See Gina C. v. Berryhill, No. 3:18CV01571(WIG), Doc. #16 (D. Conn. Jan. 22, 2019). On March 19, 2019, the Commissioner filed a cross Motion to Affirm the Decision of the Commissioner. See id. at Doc. #18. On June 11, 2019, Judge William I. Garfinkel partially granted plaintiff's motion, and judgment entered remanding the case to the Commissioner for further administrative proceedings. See id. at Docs. #19, #20; see also Tr. 250-60.

On September 10, 2019, the Appeals Council issued an order remanding the case to ALJ Thomas in light of Judge Garfinkel's ruling. See Tr. 261-68. On November 13, 2019, the Appeals Council issued a second Order Remanding Case to Administrative Law Judge. See Tr. 269-76. In that order, the Appeals Council "vacate[d] its previous remand order because it did not adequately address and acknowledge the [2018 decision]." Tr.

273. The Appeals Council directed ALJ Thomas to "consolidate the claims files, associate the evidence, and issue a new decision on the consolidated claims" as to plaintiff's initial and 2016 applications. Tr. 275.

On October 13, 2020, ALJ Thomas held a third administrative hearing, at which plaintiff, represented by Attorney Yelner, appeared and testified by telephone. See generally Tr. 42-60. Plaintiff testified with the assistance of a translator. See Tr. 44. Vocational Expert Albert Sabella also testified at the hearing by telephone. See Tr. 60-77. On November 3, 2020, the ALJ issued another unfavorable decision (hereinafter the "2020 decision"). See Tr. 15-40. On January 29, 2021, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's 2020 decision the final decision of the Commissioner. See Tr. 1-8. The case is now ripe for review under 42 U.S.C. §405(g).

## II.  <u>STANDARD OF REVIEW</u>

The review of a Social Security disability determination involves two levels of inquiry. <u>First</u>, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. <u>Second</u>, the Court must decide whether the determination is supported by substantial evidence. <u>See</u> <u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998) (citation

~ 5 ~

omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing Carroll v. Sec. Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (citing Peoples v. Shalala, No. 3:92CV04113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4, 1994)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by

substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)). **"[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision**." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (citations omitted).

### III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. §423(d)(2)(A) (alterations added); 20 C.F.R. §§404.1520(c), 416.920(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe").

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §§404.1520, 416.920. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits h[er] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider h[er] disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (alterations added). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform h[er] past work. Finally, if the claimant is unable to perform h[er] past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of

proof as to the first four steps, while the Secretary
must prove the final one.

Id. (alterations added)

"Through the fourth step, the claimant carries the burdens
of production and persuasion, but if the analysis proceeds to
the fifth step, there is a limited shift in the burden of proof
and the Commissioner is obligated to demonstrate that jobs exist
in the national or local economies that the claimant can perform
given his residual functional capacity." Gonzalez ex rel. Guzman
v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d
Cir. 2010) (alteration added); Poupore v. Astrue, 566 F.3d 303,
306 (2d Cir. 2009) (per curiam). The residual functional
capacity ("RFC") is what a person is still capable of doing
despite limitations resulting from her physical and mental
impairments. See 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1).
"In assessing disability, factors to be considered are (1) the
objective medical facts; (2) diagnoses or medical opinions based
on such facts; (3) subjective evidence of pain or disability
testified to by the claimant or others; and (4) the claimant's
educational background, age, and work experience." Bastien v.
Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for
benefits is to be determined in light of the fact that 'the
Social Security Act is a remedial statute to be broadly

construed and liberally applied.'" Id. (quoting Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV.  **THE ALJ'S 2020 DECISION**

Following the above-described evaluation process, ALJ Thomas concluded that plaintiff had "not been under a disability within the meaning of the Social Security Act from February 7, 2013, through the date of" the ALJ's decision, November 3, 2020. Tr. 22; see also Tr. 31. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 7, 2013. See Tr. 24. At step two, the ALJ found plaintiff had the severe impairments of "Fibromyalgia[]" and "Depression with Anxiety[.]" Id. (sic) The ALJ found plaintiff's diabetes to be a nonsevere impairment. See id.

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1. See Tr. 24-26. In making that determination, the ALJ evaluated plaintiff's fibromyalgia "pursuant to SSR 12-2p." Tr. 24. The ALJ also considered whether plaintiff's mental impairments met or medically equaled listing 12.04 (depressive, bipolar, and related disorders). See Tr. 24-

26; see also Tr. 126. Before moving on to step four, the ALJ

determined that plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b)
> and 416.967(b) except occasional bending, balancing,
> twisting, squatting, kneeling, crawling, and climbing
> but no climbing of ladders, ropes, or scaffolds. Avoid
> hazards, such as heights, vibration, or dangerous
> machinery but okay for driving; frequent handling and
> fingering bilaterally; no left or right foot controls;
> is capable of simple, routine, repetitious work that
> does not require teamwork or working closely with the
> public, and occasional interaction with coworker
> supervisors and the public.

Tr. 26 (sic).

At step four, the ALJ concluded that plaintiff "is unable

to perform any past relevant work[.]" Tr. 29. At step five,

after considering plaintiff's RFC, "age, education, [and] work

experience," the ALJ determined that "there are jobs that exist

in significant numbers in the national economy that the

[plaintiff] can perform[.]" Tr. 30.

## V.   DISCUSSION

Plaintiff seeks reversal and/or remand of this matter on

the grounds that: (1) the ALJ misapplied the medical-vocational

guidelines at step five of the sequential evaluation, see Doc.

#17-2 at 8-9; and (2) "the ALJ erred by relying on only his own

layperson opinion[.]" Id. at 9-14 (capitalization removed). With

respect to plaintiff's second argument, she specifically

asserts: "The ALJ made an error of law, by very clearly favoring

less favorable opinion evidence over the opinions of Ms. Castro's actual treating sources. As a result of relying on very aged opinions, the ALJ had no opinion evidence to rely upon for large portions of the relevant period." Doc. #17-2 at 9.

The Court first considers whether the ALJ properly considered the medical opinion evidence.

A.   Application of the Treating Physician Rule

Plaintiff asserts that the ALJ erred by crediting the opinions of consultative examiner Jesus Lago, M.D., over those of plaintiff's treating Licensed Clinical Social Worker Yoberki Reyes. See Doc. #17-2 at 9-10. Defendant contends that the ALJ properly considered the medical opinion evidence. See generally Doc. #21-1 at 4-7.

The Social Security Act and the regulations applicable to the treating physician rule were amended effective March 27, 2017. Those "new regulations apply only to claims filed on or after March 27, 2017." Smith v. Comm'r, 731 F. App'x 28, 30 n.1 (2d Cir. 2018) (summary order). Where, as here, a plaintiff's claim for benefits was filed prior to March 27, 2017, "the Court reviews the ALJ's decision under the earlier regulations[.]" Poole v. Saul, 462 F. Supp. 3d 137, 147 (D. Conn. 2020) (citation and quotation marks omitted).

"The SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged

~ 13 ~

> in the primary treatment of the claimant," Green-Younger, 335 F.3d at 106. According to this rule, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." 20 C.F.R. §404.1527(d)(2); see, e.g., Green-Younger, 335 F.3d at 106; Shaw, 221 F.3d at 134.

Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008); see also 20 C.F.R. §§404.1527(c), 416.927(c). If the opinion, however, is not "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques, then the opinion cannot be entitled to controlling weight. 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2).

### 1. Yoberki Reyes, LCSW

The ALJ assigned certain aspects of Ms. Reyes' two opinions "little weight" because "[o]verall," the ALJ did not find the "opinions to be supported by the record." Tr. 29. As to Ms. Reyes' 2019 opinion, the ALJ assigned "little weight to the marked limitations assessed," because they were "not consistent with her limited treatment notes," and the opinion had been completed just one month after plaintiff began treating with Ms. Reyes. Id.[6]; see also Tr. 1883-87 (2019 opinion). Similarly, as

---

[6] Notably, the ALJ did appear to credit the moderate limitations assessed by Ms. Reyes in the 2019 opinion; those limitations are included in the RFC determination. Compare Tr. 26 (ALJ decision), with Tr. 1883-84 (2019 opinion).

to Ms. Reyes' 2020 opinion, the ALJ found that the "significant absenteeism and off task issues, ... are not supported by the treatment records and" gave that assessment "little weight." Tr. 29; see also Tr. 1938-40 (2020 opinion). Substantial evidence supports this determination.

First, because Ms. Reyes is a social worker, she is not considered an "acceptable medical source[,]" and therefore, her opinions are not entitled to "controlling weight[,]" as plaintiff implies they are in her briefing. Bliss v. Comm'r of Soc. Sec., 406 F. App'x 541 (2d Cir. 2011) (citation and quotation marks omitted).

Second, the ALJ's reasons for assigning little weight to these opinions is supported by the record. With respect to the 2019 opinion, the ALJ noted that the opinion had been completed just one month after plaintiff started treatment. See Tr. 29. "Generally, the longer a treating source has treated [plaintiff] ... and the more times" plaintiff has "been seen by a treating source, the more weight" will be given to that source's opinion. 20 C.F.R. §§404.1527(c)(2)(i), 416.927(c)(2)(i).

Third, the ALJ assigned little weight to the marked impairments ascribed by Ms. Reyes because they were "not consistent with her limited treatment notes at that time" and plaintiff "showed improvement with continued therapy and the

initiation of medication[.]" Tr. 29. This finding is supported
by the record. Ms. Reyes' 2019 opinion assigned marked
limitations to most of the areas relating to plaintiff's social
functioning and her ability to understand, remember, and carry
out instructions. See Tr. 1883. The form on which the 2019
opinion is provided defines a "Marked" limitation as:
"Functioning in this area independently, appropriately,
effectively and on a sustained basis is seriously limited." Id.
By contrast, the October 2019 mental status examination
conducted by Ms. Reyes, although noting plaintiff's "poor"
attention and concentration, otherwise reported plaintiff's
appropriate thought process as well as plaintiff's fair memory,
immediate recall, judgment, and insight. See Tr. 1857; see also
Tr. 1774 (May 2019 examination: "Emotional state finding was
normal[]"); Tr. 1944 (July 2020 treatment note: "Patient
demonstrated improvement after being prescribed Abilify."); Tr.
1946 (June 2020 treatment note: "Patient's therapy sessions were
decreased to every other week due to patient demonstrating
improved mood.").

Plaintiff contends that her reported difficulty staying on
topic and rapid speech during therapy sessions supports the
"Marked" limitations assessed by Ms. Reyes in her 2019 opinion.
See, e.g., Tr. 1983 (November 2019 treatment record: "Plaintiff

continues to be somatic, hyperverbal and anxious, patient's speech is rapid and hard to follow at times. She tends to jump from one topic to another and in need of redirection."); Tr. 1915 (November 2019 treatment record: "Patient appears well. ... She is hyperverbal, speaking rapidly but coherently, not w/ psychotic features."). However, whether substantial evidence supports plaintiff's position is not the question to be decided here. Rather, the question is whether substantial evidence supports the ALJ's decision. See Bonet, 523 F. App'x at 59. For reasons previously stated, substantial evidence supports the ALJ's decision to assign "little weight" to the marked limitations in the 2019 opinion. Tr. 29.

Nevertheless, the ALJ explicitly acknowledged plaintiff's "moderate limitations" as to "concentrating, persisting, or maintaining pace," Tr. 25, and limited plaintiff to "simple, routine, repetitive work[.]" Tr. 26. Accordingly, plaintiff's limitations in this domain were fully accounted for in the ALJ's RFC determination. See, e.g., Coleman v. Comm'r Soc. Sec., 335 F. Supp. 3d 389, 401 (W.D.N.Y. Nov. 18, 2018) ("[T]he ALJ limited Plaintiff to performing only work that requires sufficient attention and concentration to understand, remember and follow simple instructions. This finding is fully consistent with the observation that Plaintiff has moderate limitations in

concentration, persistence, and pace." (citation and quotation marks omitted)).

As to Ms. Reyes' 2020 opinion, the ALJ properly assigned it little weight, based on the length of the treatment history and because the assessments regarding off-task behavior and absenteeism were not supported by the record. See Tr. 29. Ms. Reyes' treatment notes generally do not support the extent of the limitations set forth in the 2020 opinion. See generally Tr. 1941-57; see also Tr. 1946 (June 17, 2020 treatment note: "Patient is demonstrating improvement after being prescribed Abilify."); Tr. 1947 (June 11, 2020, treatment note: "Patient is able to focus more and her speech is easier to follow[]" and "is demonstrating improved mood."); Tr. 1949 (June 5, 2020, treatment note: Plaintiff reported feeling less anxious.); Tr. 1957 (May 5, 2020, treatment note: Plaintiff reported "feel[ing] a little better ... appeared to be less anxious[, and] was able to focus during the therapy session[.]").[7] Indeed, at the 2020 administrative hearing, plaintiff testified that "the psychiatric medications help [her] focus. Before [she] have

---

[7] Plaintiff contends that the ALJ's statement that plaintiff's "anxiety and social isolation was related to the pandemic, which most of society is doing right now[,]" Tr. 29, is an "unsupported finding." Doc. #17-2 at 12. However, treatment notes from this time period reflect that plaintiff avoided leaving the house because she feared the Coronavirus. See, e.g., Tr. 1962, Tr. 1964, Tr. 1966.

trouble concentrating." Tr. 58 (sic). Accordingly, substantial evidence supports the ALJ's finding that the 2020 opinion was not supported by the record.

Accordingly, for the reasons stated, substantial evidence supports the ALJ's decision to assign the opinions of Ms. Reyes little weight.

> 2.   *Dr. Jesus Lago, M.D,*

By contrast, the ALJ assigned the opinions authored by consultative examiner Dr. Lago "great weight for the periods he assessed[,]" that is, 2014 and 2017. Tr. 28. Plaintiff does not expressly challenge the weight assigned to these opinions, but instead contends that "even if [those opinions are] an accurate representation of [plaintiff's] functioning for that time period, [they] do[] not reflect her mental functioning in the subsequent three years." Doc. #17-1 at 10. This argument fails to consider that the ALJ specifically assigned great weight to these opinions "for the periods assessed[.]" Tr. 28. In that regard, the ALJ also acknowledged that plaintiff's mental "condition worsened[]" in 2019, when she first sought mental health treatment. Id. Nevertheless, an ALJ is permitted to "choose between properly submitted medical opinions[.]" Balsamo, 142 F.3d at 81. Indeed, "a consulting psychiatric examiner's opinion may be given great weight and may constitute substantial

evidence to support a decision. ... It is also generally accepted that a consultative examiner's opinion may be accorded greater weight than a treating source's opinion where the ALJ finds it more consistent with the medical evidence." <u>Colbert v. Comm'r of Soc. Sec.</u>, 313 F. Supp. 3d 562, 577 (S.D.N.Y. 2018) (internal citations omitted).

Here, the ALJ properly assigned Dr. Lago's opinions "great weight" for "the periods he assessed" because the medical records from that time period do not reflect significant mental limitations. <u>See</u> Tr. 1366 (May 2013 treatment note reflecting a normal psychiatry exam); Tr. 825 (2017 Dr. Lagos Opinion noting that plaintiff had no prior psychiatric treatment); Tr. 1181 (May 31, 2017, treatment note: "Standardized depression screening: negative for symptoms"); Tr. 1113 (June 26, 2017, pre-operative exam noting no complaints of psychiatric symptoms and a "[n]ormal affect and mood"); Tr. 1141 (August 17, 2017, post-operative visit report: "No depression, no anxiety, no agitation[]").

Accordingly, substantial evidence supports the ALJ's assignment of "great weight" to Dr. Lago's opinions for the periods he assessed.

B. <u>The RFC Determination and Evaluation of the Medical Opinion Evidence</u>

Plaintiff asserts that the RFC determination is not supported by substantial evidence because: (1) by discounting the opinions of Ms. Reyes, the ALJ had no medical evidence upon which to rely in assessing plaintiff's mental functioning, <u>see</u> Doc. #17-2 at 10-11; (2) "the ALJ misunderstood [plaintiff's] uncontrolled diabetes," <u>id.</u> at 13; and (3) the ALJ failed to account for plaintiff's off-task behaviors. <u>See id.</u> The Court addresses each argument in turn.

*1. Lack of Opinion Evidence*

Plaintiff seems to assert that the ALJ erroneously relied on his lay opinion when formulating the RFC because he did not have any medical opinion on which to rely when assessing plaintiff's mental limitations after 2017. <u>See</u> Doc. #17-2 at 10-11. Defendant responds that the ALJ "properly considered the entire record[,]" including the medical opinion evidence, when determining plaintiff's RFC. Doc. #20-1 at 10; <u>see also id.</u> at 8.

The RFC "is what the claimant can still do despite the limitations imposed by h[er] impairment." <u>Greek v. Colvin</u>, 802 F.3d 370, 374 n.2 (2d Cir. 2015) (alterations added); <u>see also</u> 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). The RFC determination is assessed "based on <u>all</u> the relevant evidence in [the] case

record[,]" including "all of the relevant medical and other evidence." 20 C.F.R. §§404.1545(a)(1), (3), 416.945(a)(1), (3) (emphases added). The RFC determination, however, does not need to "perfectly correspond with any of the opinions of medical sources[.]" Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013). Indeed, where "the record contains sufficient evidence from which an ALJ can assess claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5, 8 (2d Cir. 2017) (quotation marks and citations omitted).

Plaintiff appears to assert that because the ALJ assigned the opinions of Ms. Reyes little weight, that he substituted his opinion for that of a treating source with respect to plaintiff's mental abilities after 2017. See Doc. #17-2 at 10-11. In that regard, some courts have held that "if an [ALJ] gives only little weight to all the medical opinions of record, the [ALJ] creates an evidentiary gap that warrants remand." Waldock v. Saul, No. 18CV06597(MJP), 2020 WL 1080412, at *3 (W.D.N.Y. Mar. 6, 2020) (citations omitted) (emphases added).[8]

---

[8] The undersigned does not adopt this view, but because this case does not squarely present the question, the Court need not determine whether multiple opinions assigned "little weight" may, collectively, provide sufficient evidence on which an ALJ may base the RFC.

Plaintiff cites two cases in support of her position, each of which is inapposite to the circumstances here. See Doc. #17-2 at 11. First, in Trombley v. Berryhill, the ALJ assigned "little" weight to each of the opinions of record. Trombley, No. 1:17CV00131(MAT), 2019 WL 1198354, at *4 (W.D.N.Y. Mar. 14, 2019). Similarly, in Kurlan v. Berryhill, the ALJ "gave little or no weight to the medical opinions in the record." Kurlan, No. 3:18CV00062(MPS), 2019 WL 978817, at *2 (D. Conn. Feb. 28, 2019) (emphasis added).

Here, by contrast, the ALJ did not assign each opinion in the record little weight. Plaintiff presents no authority to support her position that an evidentiary gap is created where opinions applicable to a specific period are assigned little weight, where an RFC is assessed for a broader relevant time period based on all the evidence in the record. Additionally, as previously noted, it seems the ALJ did provide some weight to the moderate limitations provided for in Ms. Reyes' 2019 opinion. See note 6, supra. In sum, the ALJ did not make his RFC determination in the absence of any medical opinions.

"Although an ALJ is not free to set his own expertise against that of a physician, the ultimate determination of whether a person has a disability within the meaning of the Act belongs to the Commissioner[.]" Negron v. Berryhill, 733 F.

App'x 1, 3 (2d Cir. 2018) (citations and quotation marks omitted). Thus, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta, 508 F. App'x at 56. That is what the ALJ did here. In relevant part, the ALJ limited plaintiff to "simple, routine, repetitive work that does not require teamwork or working closely with that public and occasional interaction with coworker supervisors and the public." Tr. 26. In support of that limitation, the ALJ relied on Dr. Lago's 2017 consultative opinion, as well as extensive mental health treatment records from 2019 and 2020. See Tr. 28. The ALJ considered the opinions of Ms. Reyes, as well as the State agency psychologists, even though those opinions were not assigned great or controlling weight. See Tr. 29. The ALJ also acknowledged that the 2017 opinions of Dr. Lago and the State agency psychologists did not account for the decline in plaintiff's condition in 2019, when she started mental health treatment. See Tr. 28-29.

Accordingly, "there was sufficient evidence, ... including opinions from several medical sources, from which the ALJ could reach a conclusion as to the plaintiff's RFC." Marcille v. Berryhill, No. 3:17CV01620(RMS), 2018 WL 5995485, at *15 (D. Conn. Nov. 15, 2018). "Even though the ALJ's RFC determination

does not perfectly correspond with the opinions of the medical sources in the record, it is clear that it accounts for all of the evidence in, and is consistent with, the record[.]" Rivera v. Berryhill, No. 3:17CV01726(RMS), 2018 WL 6522901, at *17 (D. Conn. Dec. 12, 2018) (citation and internal quotation marks omitted).

Therefore, plaintiff's argument that the ALJ had no opinion evidence on which to rely is without merit.

### 2. Diabetes

Plaintiff next takes issue with the ALJ's consideration of her diabetes.

At step two, the ALJ stated: "The claimant has also been treated for diabetes, for which she takes Metformin[.] She testified that her diabetes was under control with medication." Tr. 24 (citation to the record omitted). The ALJ found plaintiff's diabetes to be a non-severe impairment. See id. Plaintiff does not appear to challenge the ALJ's step two finding, but instead asserts that the ALJ "misunderstood" plaintiff's condition. Doc. #17-2 at 13. Plaintiff contends that her "diabetes has not been in control for quite some time[]" and that she has experienced "neuropathic symptoms" since 2017. Id.

The ALJ did not misunderstand plaintiff's diabetic condition. First, as the ALJ stated, plaintiff testified in 2020

that her diabetes was then under control. See Tr. 51. Records throughout the relevant time period reflect plaintiff's normal glucose levels and/or the controlled nature of her diabetes. See, e.g., Tr. 811, Tr. 1198, Tr. 1347, Tr. 1374, Tr. 1420, Tr. 1440. When plaintiff's glucose levels were elevated, medical records noted that plaintiff was not compliant with medication or glucose monitoring, and that plaintiff had refused insulin. See, e.g., Tr. 1765, Tr. 1770, Tr. 1870. Regardless, although later records reflect the presence of "uncontrolled" diabetes, to the extent that condition caused any limitations, those limitations were considered by the ALJ:

> In terms of her feet, in March 2017, she saw a podiatrist for pain and weakness in her feet. She was diagnosed with diabetic neuropathy[.] ... Notably, podiatry notes in 2019 do not list neuropathy as a diagnosis[.] However, in December 2019, it is again noted[.] ... The light [RFC] accounts for reduced standing and walking due to foot issues.

Tr. 28 (citations to the record omitted). Plaintiff does not assert that her diabetes caused more limitations than those provided for in the RFC determination. Accordingly, the ALJ properly considered plaintiff's diabetes when determining the RFC and there is no error on this point.[9]

_____

[9] "Although plaintiff may disagree with the ALJ's characterization of the evidence, genuine conflicts in the medical evidence are for the Commissioner to resolve." Dudley v. Berryhill, No. 3:16CV00513(SALM), 2018 WL 1255004, at *8 (D. Conn. Mar. 12, 2018) (citation and quotation marks omitted).

3.   *Off-Task Behavior*

Plaintiff next contends: "The ALJ failed to take into account the off-task behavior that results from [plaintiff's] multiple physical and mental impairments." Doc. #17-2 at 13. In support of this argument, plaintiff relies on Ms. Reyes' opinion that plaintiff was "expected to be off task more than 30% of the day due to inability to focus[.]" Doc. #17-2 at 13 (citing Tr. 1653).

Plaintiff's argument on this point essentially seeks a reweighing of the evidence in her favor. The Court's role, however, "is not to decide the facts anew, nor to reweigh the facts, nor to substitute its judgment for the judgment of the ALJ. Rather, the decision of the ALJ must be affirmed if it is based upon substantial evidence even if the evidence would also support a decision for the plaintiff." Bellamy v. Apfel, 110 F. Supp. 2d 81, 87 (D. Conn. 2000). Indeed, "[t]he fact that [plaintiff] does not agree with [the ALJ's] findings, does not show that the ALJ failed to comply with the applicable standards." Lena v. Astrue, No. 3:10CV00893(SRU), 2012 WL 171305, at *12 (D. Conn. Jan. 20, 2012).

Here, the ALJ expressly considered Ms. Reyes' opinion regarding plaintiff's off-task behavior and largely rejected it. See Tr. 29. For reasons previously stated, the ALJ appropriately

considered Ms. Reyes' 2020 opinion and assigned it little weight. See Section V.A.1., supra. The ALJ also considered plaintiff's limitations in her ability to maintain concentration, persistence, and pace. See Tr. 25, Tr. 28. Accordingly, there is no error on this point.

C.    Step Five

Plaintiff contends that the ALJ failed to evaluate her claim under the correct "Grid rules" and "also misevaluated [her] education, finding that she has limited education (10th grade), instead of finding that she cannot communicate in English." Doc. #17-2 at 9. Defendant responds: "This argument is patently without merit, as the applicable regulations have removed English language proficiency as a relevant consideration at step five, effective April 27, 2020." Doc. #21-1 at 11. Plaintiff does not respond to this argument.

At step five, the ALJ noted that "[i]f the plaintiff had the residual functional capacity to perform the full range of light work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.18 and Rule 202.11." Tr. 31 (emphasis added). Instead, because plaintiff's "ability to perform all or substantially all of the requirements of" light work had "been impeded by additional limitations[,]" the ALJ relied on the testimony of a VE to support his step five finding

that significant jobs existed in the national economy that
plaintiff could perform. Id.

Plaintiff contends, however, that the ALJ should have
evaluated her condition under Grid Rule 202.09, which provides
that a person of advanced age, who is illiterate or unable to
communicate in English, limited to light work, and has past work
that is unskilled should be found disabled. See Doc. #17-1 at 13
(citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 §202.09).
Plaintiff's argument on this point fails to acknowledge that the
Social Security Administration ("SSA") "no longer ha[s] an
education category of 'inability to communicate in English' as
of April 27, 2020." Social Security Regulation ("SSR") 20-01P,
2020 WL 1285114, at *4 n. 8 (SSA Feb. 20, 2020). On February 25,
2020, the SSA "published a final rule 'Removing the Inability to
Communicate in English as an Education Category' that removed
this education category[.]" Id. (citing 85 FR 10586).

Accordingly, effective as of April 27, 2020:

> When determining the appropriate education category, we
> will not consider whether an individual attained his or
> her education in another country or whether the
> individual lacks English language proficiency. Neither
> the country in which an individual was educated nor the
> language an individual speaks informs us about whether
> the individual's reasoning, arithmetic, and language
> abilities are commensurate with his or her formal
> education level.

SSR 20-01P, 2020 WL 1285114, at *3 (emphasis added) (footnote omitted); see also id. ("We will assign an individual to the illiteracy category only if the individual is unable to read or write a simple message in any language.").

Accordingly, because the SSA eliminated the inability to speak English from its consideration at step five, the ALJ was not required to consider, or otherwise make a finding that plaintiff "cannot communicate in English[,]" when assessing her education skills. Doc. #17-2 at 9.

Thus, a finding of disability would not be directed by the Grids, and there is no error at step five.

## VI.   CONCLUSION

For the reasons stated, plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing **[Doc. #17]** is **DENIED**, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #21]** is **GRANTED.**

SO ORDERED at New Haven, Connecticut, this 18th day of January, 2022.

/s/
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE